### DUDLEY *v.* WESTCOTT EXP. CO.

*(City Court of New York, General Term.  October 22, 1891.)*

NEGLIGENCE—EVIDENCE.

Whether a mother, who permits her child three years and four months old to go out unaccompanied into the street for the purpose of buying candy, has omitted to exercise a proper degree of care and watchfulness, is not a question of law to be decided by the court, but a question of fact, which must be submitted to the jury, to be determined from all the surrounding circumstances.  Verdict for such a child plaintiff sustained.

*(Syllabus by the Court.)*

Appeal from trial term.

Action by Florence Dudley against the Westcott Express Company for personal injuries.  From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals.

Argued before VAN WYCK and NEWBURGHER, JJ.

*E. Luther Hamilton,* for appellant.  *Jeroloman & Arrowsmith,* for respondent.

VAN WYCK, J.  The plaintiff, who sues by a guardian *ad litem* for injuries received by being run into and over by a horse and wagon belonging to and under the control of the Westcott Express Company, was, at the time of the accident, a little girl three years and four months old, and resided with her parents at No. 234 East Forty-Second street, south side of the street, between Second and Third avenues, in a five-story apartment house.  There is no court-yard to the house, and four families live on each story.  Mrs. Dudley testifies that her child, the plaintiff, was a bright and intelligent child; that she had on this occasion given her a penny, with which to buy candy, and that her child had gone out to buy the candy at a store four houses east of her home, and that she went there once in awhile, and that on this occasion the little girl had been out of her presence three or four minutes.  The witness Whiting testified that he noticed the wagon coming up from Third avenue towards Second avenue, going east.  It was going very fast.  The driver of it was lashing the horse; that is what made the witness look back, because he was going so fast.  He was going up very fast.  He was on the south side of the street at the time.  He was going straight up, and witness was watching.  When he came near Second avenue he turned a little more south towards the sidewalk, and just as he turned the horse—  Where the child came from witness didn't know, but witness saw the child all of a sudden under the wagon.  She got knocked down, and that when he was passing, the driver was whipping the horse all the time.  Mr. Minnough, a witness, testified that when he met the defendant's wagon he saw the horse going in jumps and springs,—he was jumping.  The driver was putting the gad on him at the time,—putting the whip on him.  The driver continued to lash the horse and the horse to jump.  Mr. Standridge, another witness, testified that before the accident he saw the man coming down, standing up in the wagon, cutting and slashing the horse, and it on a run, and the horse going 12½ to 14 miles an hour.  The witness Trainer testified that the driver was standing up in the wagon, and was laying the whip on the horse, and the horse was jumping from one side to the other; first he was on the south side of the street, and then he came over to the north side, and then he recrossed the track, and went over to the south side, and went east.  That witness stood on the sidewalk, and watched all along until the accident occurred, but that the witness was not right on the ground—right on the very spot—where the accident occurred.  That he could see the child thrown down, but he could not see whether it was the horse or wagon that touched the child.  That the driver was laying on the whip, and the horse was breaking into what we call a "gallop."  Another witness, Mr. O'Connell, testified that

when he first saw the horse and driver he was on the track like, and between the paving-stones on the south side of the street. He tried to cross over. He was going zig-zag; and witness saw the little child there; saw her getting knocked down, and fall under the wagon-wheel, and saw the driver lashing up the horse with some kind of a stick or whip or his reins, and the horse kicking up monkey-shines and galloping; and that, after witness saw this fellow lashing this horse that way, he saw the child knocked down in the street and run over; and that, had he (the witness) been there himself, he would have just got run over the very same. Dr. Jeoffrey, who attended the child on every other day for three weeks, and two other witnesses, gave evidence as to the severe character of the child's injuries. This closed the plaintiff's case, whereupon the defendant moved for a dismissal of the complaint, which was refused. The defendant offered no evidence. The counsel then summed up the case, and Chief Justice EHRLICH, in a carefully considered charge, submitted the case to the jury, who returned a verdict for the plaintiff.

The court of appeals, in the *Weil Case*, 119 N. Y. 147, 23 N. E. Rep. 487, in which the plaintiff, suing for damages for personal injuries received while playing in the street, was a girl only two years of age, held that the question whether, her parents had exercised that care and restraint over her that the law requires in case of children of such tender years should have been submitted to the jury, and reversed the judgment of nonsuit, sending the case back for that question to be tried by the jury. The trial judge would have undoubtedly committed a fatal error if he had ruled as matter of law in the case at bar that the mother, by allowing the child plaintiff to go out into the street unattended for the purpose of buying candy, had neglected to observe that degree of care in regard to the movements of her child that the law imposed upon her; and so, too, it would have been error for the judge to have ruled as matter of law that the horse had been driven in a manner such as would have been indulged in by a careful and prudent man, or that the child had not been injured by defendant's horse or wagon, or that she or her mother had been negligent; and all of these questions would have been so ruled had the defendant's motion to dismiss the complaint been granted. The evidence shows that plaintiff was entitled to the verdict, and her judgment must be affirmed, with costs.